Michael R. Totaro 102229
Totaro & Shanahan, LLP
P.O. Box 789
Pacific Palisades, CA 90172
310 804 2157
Ocbkatty@aol.com
Attorneys for Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:24-bk-15353-SY |
| | Chapter 11 |
| Richard Gonzalez, | Third Amended Chapter 11 Plan of Reorganization |
| Debtor in Possession. | Dated: February 8, 2025<br>Date:   April 17, 2025<br>Time:   1:30 p.m.<br>CT.RM: 302 3420 12th St. Riverside, CA 92501 |

This Proposed Third Amended Chapter 11 plan of reorganization (the "Plan") under Chapter 11 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") provides for the restructuring of the debts of the above-named Debtor(s) (collectively "Debtor"). If confirmed, the Plan will bind all creditors provided for in the Plan, whether or not they filed a proof of claim, accept the Plan, object to Confirmation, or have their claims allowed. All Creditors should refer to Articles I-IV of this Plan for the precise treatment of their claims. A disclosure statement (the "Disclosure Statement") that provides additional information is being served with this Plan. The Disclosure Statement is explanatory only; the language used in the Plan is binding. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one.**

1

**EFFECTIVE DATE OF THE PLAN**: The Effective Date of the Plan is the first of the month following entry of the order confirming the Plan unless a stay of the confirmation order is in effect, in which case the Effective Date will be the first business day after the date on which the stay of the confirmation order has been lifted, if the confirmation order has not been vacated.

The term of the proposed plan is 84 months as to the unsecured debt. (the "Plan Period") The time period for impaired secured debt is 60 months. Unimpaired secured claims are paid at the contract rate and term. This time period for unimpaired secured debt should not be construed to encompass payments for a first or second mortgage that extends beyond 60 months. Payments made on those mortgages have no effect on Debtor obtaining a Discharge once all payments to unsecured creditors have been substantially completed.

## Article I

### Treatment of Unclassified Claims Including

### Administrative Priority Claims, Priority Tax Claims, and Gap Claims

Holders of administrative priority claims are entitled to priority pursuant to §507(a)(2) of the Bankruptcy Code including (i) professional fees and costs; (ii) United States trustee's fees; and (iii) post-petition domestic support obligations.

**A.    Administrative Claims:**

All administrative claims will be paid on the Effective Date. The only administrative claim anticipated is the quarterly fee to the United States Trustee which will be due on the end of the quarter after confirmation of the plan.

**B.    Priority Tax Claims:**

There are no priority tax claims

**C.    Involuntary Gap Claims/Domestic Support:**

There are no claims in this section.

## Article II

## Treatment of Secured and Unsecured Claims

The secured portion of the following impaired classes shall be paid as set forth below. The amount of the claim, if any, in excess of the secured claim is an unsecured claim in Class 3. However, if the holder of a secured claim makes a timely and valid § 1111(b) election, the claim shall be treated as a secured claim notwithstanding §506(a).

A.   **Class 1: Impaired Secured Creditors**

**Class 1a: Ally Financial**

   Colleterial: 2020 Chevy Express Van

   Secured Debt: $18,861

   Priority of Lien: 1ST

   Interest Rate: 6%

   Payment: $380.18

   Term: 60 Months from the Effective Date

This claim is impaired. The claim will be treated according to the following Stipulation:

### STIPULATION

This Stipulation Re: Non-Material Modification to Debtor's Second Amended Chapter 11 Plan ("Stipulation") is entered into by and between Secured Creditor, Ally Bank ("Creditor"), by and through its attorney of record, and Debtor, Richard Gonzalez ("Debtor"), by and through his counsel of record with respect to Creditor's Class 1a Secured Claim in the Debtor's 2nd Amended Chapter 11 Plan [Dkt. No.39] with respect to a 2020 Chevrolet Express 2500 Cargo Van (VIN: 1GCWGAFP6L1133019) ("Vehicle"):

*Creditor's Claim:*

On or about June 22, 2021, Debtor entered into a Retail Installment Sale Contract – Simple

Finance Charge (with Arbitration Provision) (the "Agreement") with Premium Autos, Inc. "Seller") for the purchase of the Vehicle. (*See, Claim No.1-1*). The original amount financed under the Contract was $30,705.17, which Debtor agreed to repay in seventy-four (74) consecutive monthly payments in the amount of $533.57 each,

commencing June 22, 2021. (*See, Claim No.1-1*). Seller assigned the Agreement to Creditor. (Id.) Pursuant to the Agreement, Debtor granted Creditor a security interest in the Vehicle, which is perfected as evidenced by a Certificate of Title on record with the State of California. (*See, Claim No,.1-1*).

### *The Bankruptcy Proceedings:*

On September 10, 2024, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the Central District of California-Riverside Division and was assigned bankruptcy case no. 6:24-bk-15353-SY. (*See*, Dkt. No.1) Creditor filed its proof of claim against Debtor's bankruptcy estate for $18,453.00, secured by the Vehicle, with pre-petition arrears in the amount of $17.43 (*See* Proof of Claim No1-1). On December 16, 2024, Debtor filed his Second Amended V Chapter 11 Plan with the Court ("Plan"). (*See*, Dkt. No.39). Creditor's Claim is identified as a Class 1a Impaired Secured Claim on the Vehicle. (*Id*). Counsel for Creditor, and Debtor have met and conferred regarding the Debtor's Plan and a few questions or issues related thereto.

**THE PARTIES STIPULATE AS FOLLOWS**:

1. The Parties agree that Debtor's Disclosure Statement and Plan [Dkt; Nos.41, and 39, respectively], as to the Class 1a Impaired Secured Claim, shall be stricken and replaced with the following language: " *Class 1a Secured Claim. Ally Bank, secured by the 2020 Chevrolet Express 2500 Cargo, VIN: 1GCWGAFP6L1133019 ("Vehicle"), shall have a Secured Claim in the amount of $18,861, to be amortized over 60 months, at a fixed interest rate of 7.75% per annum ("Secured Claim"). General Unsecured Claim. The remaining portion of Ally Bank's claim, in the amount of $1,326.11, shall be paid in accordance with its pro-rata share to unsecured claims in accordance with the Class 3 General Unsecured Claims.*

*Contractual Payments. Debtor shall tender regular monthly contractual payments to Ally Bank commencing February 15, 2025 continuing on the 15th day of each month until January 15, 2030 when the Secured Claim shall be paid in full. The amount of the current contractual monthly payment is $380.18. Payments shall be made payable to Ally Bank and sent to the address stated in Ally Bank's Proof of Claim.*

*Insurance. Debtor agrees to provide counsel for Ally Bank with a copy of the insurance for the Vehicle within 3 business days, and upon Ally Bank's reasonable request for the same. Post-Confirmation Default. Upon the Effective Date of Debtor's Chapter 11 Plan, the Automatic Stay shall terminate in all respects as to Ally Bank. If Debtor fails to to make payment in accordance with this treatment, Ally Bank may provide notice of default in accordance with the Agreement and state law, and proceed with its remedies in accordance with the Agreement, and applicable state law, including*

*but not limited to repossession and sale of the Vehicle, without further notice, order, or proceeding of the Court.*

*Any forbearance by Ally Bank in exercising any right or remedy, including, without limitation, Ally Bank accepting payments from third persons, entities or successors in interest to Debtor, or in amounts less than the amount due under this Stipulation or Agreement, shall not be a waiver of or preclude Ally Bank's exercise of any right or remedy hereunder. The acceptance by Ally of a late or partial payment shall not act as a waiver of its right to proceed hereunder or under the Agreement.*

*In the event the Debtor's case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Ally Bank's Secured Claim shall revert to its, modified preconfirmation amount due under the Loan, less any payments received hereunder and applied per the pre-confirmation Loan terms.*

*Except as otherwise expressly provided herein, all remaining terms of the Agreement, which are incorporated herein by this reference, shall govern the treatment of Ally Bank's Secured Claim. The Debtor has reviewed and has no objection as to Ally Bank's Proof of Claim as the claim is not disputed.*"

2. Debtor agrees that it will execute a separate adequate protection stipulation being circulated concurrently herewith in order to commence the payments required above prior to Confirmation of the Debtor's Plan of Reorganization.

3. Debtor agrees the above referenced language will be inserted in any Chapter 11 Plan

filed in this case (including any modified or amended plan) that is set for confirm action in these proceedings and counsel for Debtor shall allow the Creditor's counsel to review any such finalized Plan before it is filed with the Court to ensure compliance with this Stipulation.

4. In the event Debtor's Plan reflects all the terms and provisions herein, Creditor shall provide Ballots for the Debtor's Chapter 11 Plan, as amended herein, for its Secured and General Unsecured Claims.

**Class 1b:     Balboa Capital Corp**

Colleterial: 2017 Freightliner

Secured Debt: $40,0000

Priority of Lien: 1st

Interest Rate: 6%

Payment: $773.31

Term: 60 Months from Effective Date

This claim is impaired as the secured amount is reduced to the market value and the balance of the claim treated as unsecured. The interest rate is adjusted to 6% All other terms of the original contract remain in effect.

**Class 1c: Goodleap, LLC**

Colleterial: AC

Secured Debt: $2,000.00

Priority of Lien: 1st

Interest Rate: 6%

Payment: $38.66

Term: 60 Months from Effective Date

This claim is impaired as the secured amount is reduced to the market value and the balance of the claim treated as unsecured. The interest rate is adjusted to 6% All other terms of the original contract remain in effect.

**Class 1d:    FCI Lender Services, Inc.**

Collateral: 27668 Longmeadow Ct. Moreno Valley, Ca 92555

Secured Debt: $60,000.00

Priority of Lien:  2nd

The Debtor and Creditor have entered into the following stipulation for plan treatment:

## II. STIPULATION

a. The foregoing recitals are incorporated herein by reference.

b. The amount of Secured Creditor's claim will not be modified by way of the instant Chapter 11 case, and Secured Creditor is deemed an over-secured creditor. Secured Creditor shall have a secured claim in the amount of $66,574.65 through November 30, 2024 (the "Secured Claim") to be amortized over five (5) years at 7.00% per annum, commencing January 1, 2025 with the maturity date of December 31, 2029. The principal and interest monthly mortgage payments will be in the amount of $1,318.26 each. Debtor shall tender principal and interest payments in the sum of $1,318.26 commencing January 1, 2025, and on the first (1st) of each consecutive month thereafter, continuing until all such outstanding amounts under the Secured

Claim are paid in full. Said monthly payments in the amount of $1,318.26, commencing January 1, 2025 shall be made payable and delivered directly to Creditor's servicer, FCI Lender Services, Inc., P.O. Box 27370, Anaheim Hills, CA.

.

    c. The automatic stay with respect to the subject property and Secured Creditor will be terminated upon entry of the Order confirming Debtors' Chapter 11 Plan, without further Order or hearing being necessary.

    d. Upon default of the Debtor of any of the provisions under this Stipulation Agreement, Secured Creditor will serve upon the Debtor and Debtor's attorney a ten (10) day written notice of the default. If the default of the Debtor is not cured within ten (10) days of the date that the Notice is given to Debtor, then on the eleventh (11th) day, Secured Creditor will be entitled for automatic relief from the automatic stay (should a stay be in effect at the time) without further notice or court order needed. Upon relief from stay, Secured Creditor will be allowed to take any action permitted under non-bankruptcy law to enforce the terms of the Plan or its Note, including foreclosure.
pon relief from stay, Secured Creditor will be allowed to take any action permitted under non-bankruptcy law to enforce the terms of the Plan or its Note, including foreclosure.
itted under non-bankruptcy law to enforce the terms of the Plan or its Note, including foreclosure.

    e. Neither the entry of an order approving this Stipulation nor the acceptance of the interest payments shall constitute, or be deemed to be, a waiver of any of Secured Creditor's rights or claims under the Loan Documents or applicable law, or a cure of any default by Debtor under the Loan Documents.

    f. Except as otherwise set forth herein, both Secured Creditor and Debtors reserve all rights that each may have with respect to the Collateral in this Chapter 11 proceeding. Secured Creditor expressly reserves all right to seek, and Debtors expressly reserves all rights to object to, relief from or modification of the automatic stay, appointment of a trustee, dismissal or conversion of the case, or any other remedies that it may have.

    g. The terms of this Stipulation may not be waived, modified, altered, or changed by the Debtors' Chapter 11 Plan, any confirmation thereon, any subsequently filed Amended Chapter 11 Plan, and confirmation order thereon, without express written

consent of Secured Creditor. The terms of this Stipulation shall be incorporated into Debtors' Chapter 11 Plan, and/or subsequently filed Chapter 11 Plan.

h. In the event the Debtor's case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Secured Creditor shall retain its lien in the full amount due under the original Note, all terms and Secured Creditor's claim shall revert to the original terms of the Note and Deed of Trust, and the automatic stay shall be terminated without further notice, order, or proceeding of the court.

i. In the event the Debtor sells the subject property prior to confirming his Chapter 11 Plan, Secured Creditor shall be entitled to proceeds from the sale in the amount no less than the outstanding balance owing under the terms of the Note. If the proposed sale of the property is less than the outstanding balance due and owing under the note, then Secured Creditor's written consent must be obtained before the property is sold. If the Debtor sells the subject property, Secured Creditor shall be entitled to credit bid at any such sale, and receive from such sale, an amount not less than the full unmodified amount that was due and owing on the subject loan prior to entering into the instant Stipulation.

j. Secured Creditor shall retain its lien for the full amount remaining due under the Note, and may accelerate the loan pursuant to the terms of the Note that mature on December 1, 2024 in the event Debtor fails to confirm and complete the Chapter 11 Plan.

k. Upon entry of an order approving this Stipulation, the provisions hereof shall be immediately binding upon and inure to the benefit of Secured Creditor, Debtor and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Case or in any superseding Chapter 7 case as a legal representative of Debtor or Debtor's estate. This Stipulation will remain in full force and effect notwithstanding the closure of this bankruptcy case after confirmation of the Chapter 11 Plan, or the entry of a final Decree in this case.

l. This stipulation shall terminate should this case be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code, and the loan will revert to its original terms as if this Stipulation never existed.

m. Upon entry of an order approving this Stipulation, Secured Creditor will vote in favor of Debtor's Chapter 11 Plan and will support confirmation of the Chapter 11 Plan. If permitted this stipulation may be used as a ballot in support of confirming the plan.

n. No rights are intended to be created hereunder for the benefit of any third party or creditor or any direct or indirect incidental beneficiary except as specifically provided herein.

o. All notices required to or permitted to be given to Debtor under this Stipulation shall be addressed as follows:

Richard Gonzalez
27668 Longmeadow Circle
Moreno Valley, CA 92555

 And

Michael R. Totaro
Totaro & Shanahan, LLP
P.O. Box 789
Pacific Palisades, CA 90272

All notices required to or permitted to be given to Secured Creditor under this Stipulation shall be addressed as follows:

Lucas Profit Sharing Plan
c/o Norman Lucas
26124 Marina Drive, Rolling Hills Estates, CA 90274
*Also via email to Lucas@TheLucasTeam.com*

and

Lior Katz, Esq.
Katz Law, APC
5850 Canoga Avenue, Suite 400
Woodland Hills, CA 91367
*Also via email to lior@katzlaw.com*

The above addresses may be changed effective upon receipt of a new address. Any notice required herein or permitted to be given shall be in writing and be personally served or sent by facsimile (upon confirmation of receipt), email and United States mail and shall be deemed given when sent or, if mailed, when deposited in the United States mail so long as it is properly addressed. All notices and reports required hereunder shall also be sent to counsel for any official committee.

p. Except as expressly provided in this Stipulation, the Debtor waives any and all claims, causes of action (whether known or unknown), that she has against Secured Creditor, and its agents, predecessors, and assigns, in relation to the subject loan being modified by this Stipulation, and any and all agreements which exist between them regarding or relating to the subject loan prior to entering into the instant Stipulation. This

waiver includes Debtor's right to object to Secured Creditor's claim. The Debtor also releases Secured Creditor, its agents, attorneys, predecessors, and assigns, from any liability in relation to the subject prior to the date of this Stipulation.

  q. The Bankruptcy Court shall retain exclusive jurisdiction over the subject matter of this Stipulation in order to resolve any dispute in connection with the rights and duties specified hereunder.

  r. Except as otherwise expressly provided in this Stipulation, the terms and conditions of the Loan Documents shall remain in full force and effect and Secured Creditor shall have all of its rights and remedies thereunder, subject to the provisions of Bankruptcy Code and any orders of this Court.

  s. This Stipulation, containing eight (8) pages may be executed in original or facsimile signature and in counterpart copies, and this Stipulation shall be deemed fully executed and effective when all parties have executed and possess a counterpart, even if no single counterpart contains all signatures.

**B. Class 2: Unimpaired Secured Creditors**

  **2a: Nationstar Mortgage, LLC**

   Collateral: SFH

    Secured Debt: $293,859.00

    Priority of Lien: 1st

    Interest Rate: Contract Rate

    Payment: $2,129.00

    Term: Balance of Contract Term

This claim is unimpaired. Debtor agrees to each of the terms of the original contract.

  **2b: Toyota Financial Services Inc.**

   Collateral: 2022 Toyota Sienna

   Priority of Lien: 1st

   Interest Rate: Contract Rate

   Payment:

   Term: Balance of Contract

This claim is unimpaired. Debtor agrees to each of the terms of the original contract.

B.   Class 3:   **General Unsecured Creditors:**

The following unsecured creditors will be paid 100% of their filed and allowed claims over a period of 84 months without interest. The Debtor may pay the debt in full at any time prior to 84 months without penalty.

| Unsecured and Unsecured Portion | Amt | Claim # |
|---|---|---|
| Ally Financial (Partial) | 3,210.00 | 1 |
| Santander (Estimated) | 10,190.60 | 2 |
| Balboa (Partial) | 21,663.00 | |
| Goodleap, LLC (Partial) | 3,935.00 | 3 |
| **Total Claims Filed** | 38,998.60 | |
| | | |
| **No Claim Filed** | | |
| Credit One Bank | 2,053.00 | No Claim |
| The Home Depot | 700.00 | No claim |

   **Class 3:**   **Equity Interests Holders**

Debtor is the only Interest Holder and will retain Debtor's interest in the estate. Debtor's interest is unimpaired.

**Article III**

**Allowance and Disallowance of Claims**

**A.   Disputed Claims:**

A disputed claim is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent, unliquidated or unknown. No claims have been filed to date.

B.  **Delayed Distribution on Disputed Claims**:

No distribution will be made on account of that portion of a claim that is disputed unless that claim is allowed by final non-appealable order. Pending resolution of a disputed claim, Debtor will set aside a pro-rata distribution of the face amount of the claim.

C.  **Settlement of Disputed Claim:**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with FRBP 9019 unless the amount allowed by the compromise does not exceed $5,000.00, in which case no court approval is necessary.

# Article IV

## Executory Contracts and Unexpired Leases

A.  **Executory Contracts and Leases to be Assumed:**

On the Effective Date, the Debtor will assume the following executory contracts or unexpired leases and shall perform all obligations thereunder, both pre-confirmation and post-confirmation. Contracts to be assumed are as follows:

Nationstar  (Mortgage)

FCI Lending (Mortgage)

Toyota Financial Services (2022 Toyota)

These contracts will be assumed at the original contract rate and terms. Arrearages are provided for at the contract rate.

B.  **Executory Contracts and Leases Rejected**.

On the Effective Date Debtor will reject the following executory contracts or unexpired leases.

Ally Financial (Chevy Express Van)

Chrysler Capital (Charger)

Balboa Capital  (Freightliner)

Goodleap, LLC (Air Conditioning)

The original contracts are rejected and replaced by the proposed treatment in the Chapter 11 plan.

# Article V

## Feasibility and Means of Implementation

The Plan cannot be confirmed unless the court finds it feasible. A plan is feasible if confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization, of the Debtor, unless such liquidation or reorganization is proposed in the Plan.

The projected plan payments due on the Effective Date

| Ally | 380.18 |
|---|---|
| Balboa | 773.31 |
| Goodleap | 38.66 |
| FCI | 1,318.26 |
| Unsecured | 464.26 |
| Living Expenses | 7,864.36 |
| Total | 10,839.03 |

The projected income due on the Effective Date and thereafter are as follows:

| Net Income | |
|---|---|
| Debtor Salary Net | 7987 |
| Spouse Salary Net | 1502 |
| Truck Income | 2000 |
| Total Income | 11489 |

Attached to the Second Amended Disclosure Statement as Exhibit 1 and incorporated herein by reference, are revised income and expenses schedules demonstrating that Debtor is providing all Debtor's disposable income to the plan.

# Article VI

## Discharge and Other Effects of Confirmation

**A.    Discharge:**

   **1.    Plan Period**

For the purpose of discharge, the length of this plan shall be 84 months from the effective date and as set forth below, shall not include payments on any secured claim or tax claim that extends beyond 84 months from the Effective Date of the Plan.

Debtors shall receive a discharge of debts to the extent and at the time provided in 11 U.S.C. §1141(d), whether or not a party in interest has filed a proof of claim or interest, or accepts this Plan, unless the court orders otherwise.

Pursuant to §1141(d)(5), Debtors will not be discharged from any debt unless and until (1) Debtors completes all payments "under" the Plan and obtains an order of the court granting a discharge (§1141(d)(5)(A)&(C)) – for purposes of this Plan payments that extend beyond the Plan Period are not considered payments "under" the Plan (e.g. 30 year mortgage payments); (2) the court grants a limited ("hardship") discharge ((§1141(d)(5)(B)&(C)); or (3) the court "orders otherwise for cause" (§1141(d)(5)(A)&(C)). Notwithstanding the other terms of this paragraph, a discharge will not discharge Debtors from any debts that are nondischargeable under §523 (except as provided in Rule 4007(c)) or the obligations created by this Plan.

The payments promised in the Plan constitute new contractual obligations that replace the pre-confirmation debts proposed to be discharged. Creditors may not sue to collect on these obligations so long as the Debtors are not in material default under the Plan. If the Debtors defaults in performing the Plan, affected creditors may sue the Debtors to enforce the terms of the Plan or to dismiss this case or to convert it to a case under chapter 7 of the Bankruptcy Code.

   **2.    Less Than Plan Period**

After substantial compliance of the plan, Debtor may seek a discharge of any debt not being paid through the plan and seek a final decree and closure of the case.

Nothing in this paragraph shall prevent the Debtors from accelerating and prepaying all agreed payments to the unsecured creditors and seeking a Discharge for cause pursuant to (§1141(d)(5)(A)&(C) in a period of time under 84 months. To

accomplish this, Debtors may file a Motion for Discharge Final Decree and Closure under 11 U.S.C. §1141(d)(5).

**B.    Vesting of Property:**

On the Effective Date, all property of the estate will vest in the reorganized debtor pursuant to § 1141(b), free and clear of all claims and interests except as provided in the Plan.

However in the event of a post confirmation conversion or default LBR 3020-1(b) states as follows:

> If the above-referenced case is converted to one under chapter 7, the property of the reorganized debtor, or of any liquidation or litigation trust, or of any other successor to the estate under the plan, that has not been distributed under the plan shall be vested in the chapter 7 estate, except for property that would have been excluded from the estate if this case had always been one under chapter 7.

**C.    Plan Creates New Obligations:**

Except as otherwise stated in the Plan, the payments promised in the Plan constitute new contractual obligations that replace those obligations to creditors that existed prior to the Effective Date.

**D.    Creditor Action Restrained:**

Creditors may not take any action to enforce either pre-confirmation obligations or obligations due under the Plan, so long as the Debtor is not in default under the Plan. If the Debtor is in material default under the Plan, affected creditors may: (i) take any actions permitted under non-bankruptcy law to enforce the terms of the Plan; or (ii) move to dismiss this case or to convert this case to a Chapter 7 bankruptcy case.

**E.    Material Default Defined:**

If Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a

written notice of default. The Debtor is in material default under the Plan if the Debtor fails within 21 days of the service of such notice of default, plus 3 additional days if served by mail, either: (i) to cure the default or (ii) to obtain from the Court an extension of time to cure the default or a determination that no default occurred.

**F.    Retention of Jurisdiction**:

This Court will retain jurisdiction until all Plan payments have been made. After the Final Decree and Discharge this Court will retain jurisdiction of any post-confirmation violation of the order confirming the Plan.

Pursuant to 11 USC §1123(b)(3), except as provided herein, Debtor shall have exclusive right to enforce any and all causes of action against any persons and the rights of the Debtor that arose before or after the Petition Date, including but not limited to the rights and powers of a trustee and debtor in possession against any person whatsoever, including but not limited to all avoidance powers granted to the Debtor under the Bankruptcy Code and all causes of action and remedies granted pursuant to Section 502, 506, 544,545, 547 through 551 and 553 of the Bankruptcy Code.

**G.    Sale of Real or Personal Property:**

Debtor shall be entitled to sell any real or personal property to generate funds to pay all the secured debt of that property and any unsecured debt, priority debt, and any pre-petition arrearage on any secured claim. Once the Plan is confirmed, such property is no longer property of the estate under 11 U.S.C. 1141(b) and court approval is not necessary for such sale provided such sale does not violate the terms of the Confirmed Plan.

11 U.S.C. §1141(b) states as follows:

> (b)    Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

However, if any of the property to be sold is listed as an impaired class, *supra,* then Debtor must obtain the written consent of the Lender prior to such sale until Debtor obtains a discharge.

The net proceeds from the sale shall first be distributed to pay any homestead exemption, then unsecured debt, priority debt and pre-petition arrearage before any funds are disbursed to the Debtor for Debtor's own use.

# Article VII

# Miscellaneous Provisions

**A.    Disbursing Agent**

Debtor will act as the disbursing agent.

**B.    Tax Consequences of Plan:**

Creditors and Interest holders should consult with their own accountants, attorneys and/or advisors concerning any tax consequences. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor.  The Debtors **CANNOT** and **DOES NOT** represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the Debtors' tax liability: There are possible forgiveness of debt issues and maybe some carry over losses to be determined at a later date. Such consequences will have no impact on the plan.

**C.    Risk Factors:**

The primary risk factor is that Debtor will be unable to gain the extra income from the one commercial truck. However, Debtor is new to his current employment and his salary is expected to increase.

**D.    Default:**

This section does not apply to the first or second deeds of trust in favor of Nationstar or FCI Servicing. If Debtors fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the affected creditor may serve upon Debtors and Debtors'  attorney (if any) a written notice of default. The Debtors are in material default under the Plan if the Debtors fails within 21 days of the service of such notice of default, plus 3 additional days if served by mail, either: (i) to cure  the default  or (ii) to obtain from  the Court an  extension of time to cure the default or a determination that no

default occurred. The affected creditor(s) may sue the Debtors to enforce the terms of the Plan or to dismiss this case or to convert it to a case under Chapter 7 of the Bankruptcy Code.

E.    **United States Trustee Fees:**

Debtors will remain current with all quarterly fees for the United States Trustee and will complete and file quarterly operating reports until Final Decree and Closure of this case.

F.    **11 U.S.C. §1115 Disposable Income:**

If a creditor objects to the Plan, Debtors must contribute his projected disposable income to the plan for the Plan Period. In this regard 11 U.S.C. §1115 states as follows:

(a)    In a case in which the Debtors are an individual, property of the estate includes, in addition to the property specified in section 541—

(1) all property of the kind specified in section 541 that the Debtors acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and

(2) earnings from services performed by the Debtors after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

G.    **Definitions and Rules of Construction**:

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in the Plan.

H.    **Plan Modification:**

Prior to confirmation this Plan may be amended, modified, or supplemented by the Reorganized Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct.

In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Claims pursuant to this Plan,

the Reorganized Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

Further, after confirmation the Reorganized Debtor and any creditor may modify the treatment of that Creditor's claim by filing a stipulation and order for any such modification providing the Court is satisfied such stipulation does not alter the rights of any other Creditor.

However, after substantial compliance of the plan, Debtor may seek a discharge of any debt not being paid through the plan and seek a final decree and closure of the case.

Nothing in this paragraph shall prevent the Debtors from accelerating and prepaying all agreed payments to the unsecured creditors and seeking a Discharge for cause pursuant to (§1141(d)(5)(A)&(C)) in a period of time under 84 months. To accomplish this, Debtors may file a Motion for Discharge Final Decree and Closure under 11 U.S.C. §1141(d)(5).

Exh

Respectfully submitted

By: _____
Richard Gonzalez

Totaro & Shanahan, LLP

By: /s/ Michael R. Totaro
    Michael R. Totaro
    Attorneys for the Debtor